332 P.2d 926

STATE of Utah, By and Through its ROAD COMMISSION, Plaintiff and Appellant,

v.

DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, a Delaware corporation, Defendant and Respondent.

No. 8754.

Supreme Court of Utah.

Dec. 13, 1958.

E. R. Callister, Jr., Atty. Gen., Walter L. Budge, Wallace B. Kelly, Asst. Attys. Gen., for appellant.

Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for respondent.

HENRIOD, Justice.

Interlocutory appeal from an order denying a motion for immediate occupancy of a 1.75 mile branch line operated by defendant, condemnation of which is sought as an adjunct to a national highway project.[1] Affirmed and remanded with instructions.

Defendant's main line runs north-south through Midvale, Utah, the branch in question, called the "Little Cottonwood," running easterly therefrom, and another branch running westerly. The Little Cottonwood branch is operated by defendant on the south portion of Center Street, which accommodates some 8,000 vehicles daily along said street and over defendant's main line. This branch is assessed at about $6,525, grosses about $21,500 annual-

1. Highway Act of 1956, now 23 U.S.C.A. § 101 et seq.; Project 1–01–7(3).

ly, serves several customers on the east of the proposed freeway, and about 80 railroad cars are operated over it annually. Plaintiff's motion contemplated the elimination of this branch so that a limited-access freeway, planned along a route east of and parallel to defendant's mainline, could be constructed at grade, the freeway and the mainline to be underpassed to accommodate the vehicular traffic mentioned. Such programming dates back to 1948. At least half of the necessary approaches to the intersection of the proposed freeway and Center Street, had been acquired by plaintiff at the time of hearing on the motion, and the order of occupancy was sought so that questions as to whether plaintiff would cross at grade, underpass or overpass would be resolved, the final construction being projected some 3 to 5 years in the future (presently some 2 to 4 years in the future). Plaintiff contends, with considerable merit, that without a present order of occupancy, plans which would require many months to prepare, could have but conjectural assurance of being effectuated.

Plaintiff's motion contemplated elimination of the Little Cottonwood branch altogether in order to construct the freeway at grade. It sought immediate occupancy in an ex parte hearing, but did not sug-gest or request any determination as to whether the freeway had a higher and better use than had the branch line, an issue joined by defendant's pleadings. Both plaintiff and defendant are empowered to exercise the right of eminent domain.[2] This case, therefore, is somewhat of a rarity, requiring a determination as to whether the exercise of the one power or the other will better promote the public good, —a situation not involved in substantially all condemnation cases in this state, where the sovereign is seeking condemnation of property belonging to one not enjoying such power. In the latter type of case it has been considered routine to grant motions for immediate occupancy, since generally it is quite obvious that no question of higher and better use will or can arise, or that the right to condemn is debatable.

■ The granting of a motion for immediate occupancy has been held by this court primarily to be one directed to the sound discretion of the trial court, reversible only because of obvious abuse thereof; that the order resulting from such motion is interlocutory in nature, and that the matter of determining any right to condemn is one for consideration at the trial at which the issues generally are determined.[3] Conclusions reached were the result of a construction of the then pertinent statutory

2. Title 78-34-1, U.C.A.1953; Title 56-1-5, U.C.A.1953.

3. Utah Copper Co. v. Montana-Bingham Consol. Mng. Co., 69 Utah 423, 255 P. 672.

provisions,[4] which, for purposes here, were identical to those presently controlling.[5] Any other results would call for legislative action.

It would appear that if the facts adduced at the ex parte hearing on plaintiff's motion had been those established at a regular trial where there was an opportunity to canvass all issues, including that of right to condemn, there would be little doubt but that the freeway as proposed would serve a higher and better use than does the branch line. However, defendant, having made an issue of the matter, should be allowed to meet it with the adduction of any competent evidence it may choose to present, at a regular trial.

The order of the trial court is affirmed, but the case is remanded with instructions to proceed with a trial of the issues, including that of which use will better promote the public good. Such trial, we suggest, should be had with reasonable dispatch and because of the time element and the magnitude of the issues, should enjoy preference over matters of much less moment.

McDONOUGH, C. J., and CROCKETT, WADE and WORTHEN, JJ., concur.

---

4. Comp.Laws of Utah 1917, Sec. 7339.
5. Title 78-34-9, Utah Code Annotated 1953: "Occupancy of premises *pending action*.—The plaintiff may move the court * * * at any time after the commencement of suit, on notice to the defendant * * * for an order permitting the plaintiff to occupy the premises sought to be condemned pending the action * * *. The court or a judge thereof shall take proof by affidavit or otherwise of the value of the premises sought to be condemned and of the damages which will accrue from the condemnation, and of the reasons for requiring a speedy occupation, and shall grant or refuse the motion according to the equity of the case and the relative damages *which may accrue to the* parties. * * * The court or judge may also, *pending the action,* restrain the defendant from hindering or interfering with the occupation * * *." (Emphasis added.)